# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| BANK OF HOPE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAYK ENTERPRISES, INC., d/b/a | ) | CIVIL ACTION NO: |
| Country Inn & Suites Montgomery East, | ) | 2:20-CV-00155-MHT |
| DAE SON SONG and KANG SUN SONG, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## RECEIVER'S OPENING REPORT AND INVENTORY

1.      Trigild Hospitality ('Receiver") was appointed as receiver by the United States District Court for the Middle District of Alabama Northern Division (this "Court") through the Order Appointing Receiver ("Appointment Order") on January 21, 2021. The Receiver was appointed to operate and maintain the real property addressed at 5155 Carmichael, Montgomery, AL 36106 (the "Property"). The Property is a closed hotel.

2.      Attached hereto as Exhibit A is the Receiver's Opening Report and Inventory. This report will be served on all parties via ECF.

Executed this 22nd day of February 2021 at Dallas, Texas

Respectfully Submitted,

/s/ David Wallace

David Wallace
Agent for Receiver
david.wallace@trigild.com

**OPENING INVENTORY AND TAKEOVER REPORT**

# Opening Report and Inventory

**EXHIBIT A**

**Country Inn & Suites Montgomery East**

# Takeover Report

**5155 Carmichael Road, Montgomery, AL 36106**



## **Table of Contents**

Exhibit A - Operational Takeover Summary

Exhibit B - Maps

Exhibit C - Property Condition Reports

Exhibit D - Inventories

Exhibit E - Photographs

Exhibit F - Permits and Licenses

Additional Information

        1) OAR

**Exhibit A**

**<u>Takeover Report</u>**

# Operational Takeover Summary
## Country Inn & Suites
### 5155 Carmichael Road, Montgomery, AL 36106-2905

**Receivership Summary:**

On January 21, 2021, the United States District Court for the Middle District of Alabama Northern Division entered that certain Order Appointing Receiver appointing Trigild Hospitality as receiver over the specific assets of DAYK ENTERPRISES, INC DBA Country Inn & Suites Montgomery East; DAE SON SONG & KANG SUN SONG. The Receivership Estate includes the Country Inn & Suites Montgomery East addressed at 5155 Carmichael, Montgomery, AL.

**Property:**

*Property Information*

- At the time of the takeover, the hotel was closed for operations.
- The hotel is flagged under the Country Inn & Suites brand.
- There is a total of 108 rooms.
- The hotel was heavily vandalized with extensive damages prior to the takeover. These include both interior and exterior damages that include but not limited to the following:
  - Copper wire theft
  - Ceiling damage
  - FF&E damage
  - Broken windows and doors
  - Mold
- Property and condition report can be found in exhibit labeled under "Property and Condition Report".
- Due to safety concerns, the receivership estate was unable to complete a thorough inspection of the property.
- Several incidents occurred during the takeover with the police and intruders of the property.
- Received a letter from the city of Montgomery in regard to the property being condemned. The city is requesting to secure the property by boarding up the 1st floor windows and any windows that are broken above the 1st floor.
- All the utilities were shutoff.

*Operations – Permits and Licenses*

- Copies of all the available permits and licenses at the property were made during the takeover process.

*Operations – Insurance*

- The receivership estate is currently determining and securing adequate insurance coverage.

*Operations – Existing Vendor Agreements, Contracts, and Lease*

- Copies of all the available vendor agreements and contracts were made and being reviewed.

*Operations – Utilities*

- Utility accounts were not in service at the time of the takeover.

*Operations – Management*

- Met with various vendors to acquire bids to secure the property.
  - Temporary fencing
  - Boarding up windows
  - Patrol service

*Accounting – Bank Account*

- In progress of opening a bank account under the receivership estate.

**Exhibit B**

**<u>Maps</u>**



5155 Carmichael RdMontgomery, AL 36106



5155 Carmichael RdMontgomery, AL 36106



5155 Carmichael RdMontgomery, AL 36106

**Exhibit C**

**Property Condition Reports**

**Property Condition Report**

Location: Country Inn & Suites
Address: 5155 Carmichael
City: Montgomery
State: Alabama
Zip: 36106
Phone No. Disconnected

| Facility Overview: | Good | Fair | Poor | N/A | Comments: |
|---|---|---|---|---|---|
| Overall Curb Appeal | | X | X | | |
| Parking Lot | | X | X | | |
| Landscaping | | X | X | | |
| Great Sign | | X | | | |
| Other Signs | | X | | | |
| Exterior Paint | | | X | | |
| Sidewalks | X | | X | | |
| Trash Enclosure | X | | X | | |
| Canopy | | | X | | |
| Roof | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Drainage | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Lighting (outside) | | | | Disconnected | |
| Lighting (inside) | | | | Disconnected | |
| Plumbing | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Restrooms | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Floors | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Carpet | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Interior Paint | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Ceiling Tiles | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Kitchen Equipment | | | | | Was Not Been Inspected Due to Unsafe Condition |
| Office Equipment | | | | | Was Not Been Inspected Due to Unsafe Condition |
| POS System & Equipment | | | | | Was Not Been Inspected Due to Unsafe Condition |

| Building Info.: | |
|---|---|
| Year Built: | unk |
| Building square footage: | Approx. 41,000 |
| Construction: | Masonry |
| Wall: | Stucco |
| Roof: | unk |
| Sprinklers: | Yes |
| Fire Alarm: | Yes |
| Burglary Alarm: | No |

**Exhibit D**

**<u>Inventories</u>**

**Due to health and safety concerns, the receivership estate was unable to document inventory at the hotel at this time. The inventory will be completed once the health and safety concerns are remedied.**

**Exhibit E**

**Photographs**



























**Exhibit F**

**Permits and Licenses**

**THIS LICENSE EXPIRES**

**December 31st**

**PLEASE RENEW BY FEBRUARY 1ST OF THE FOLLOWING YEAR**

# CITY OF MONTGOMERY
## MONTGOMERY, ALABAMA



No. 202010893

**20**  **20**

**BUSINESS LICENSE**

**LICENSE VALID ONLY AT LOCATION INDICATED. NOT TRANSFERABLE**

| MAILING NAME AND ADDRESS | LOCAL TRADE NAME AND PHYSICAL LOCATION |
|---|---|
| DAYK ENTERPRISES INC<br>5155 CARMICHAEL RD<br>MONTGOMERY, AL 36106 | COUNTRY INN AND SUITES MONTGOMERY<br>5155 CARMICHAEL RD<br>MONTGOMERY, AL 36106 |

THE FIRM, CORPORATION, ORGANIZATION, BUSINESS OR PERSON, WHOSE NAME APPEARS ABOVE HAS PAID THE REQUIRED LICENSE FEE AND IS AUTHORIZED TO ENGAGE IN BUSINESS IN MONTGOMERY, ALABAMA AS INDICATED BELOW.

| CODE | ACCOUNT NUMBER | LICENSE NUMBER | RECEIPT NUMBER | TYPE OF LICENSE |
|---|---|---|---|---|
| | 9355524 | 202010893 | | |
| 721000 | ACCOMMODATIONS - HOTEL | | | |
| 000000 | 10 PERCENT RULE. | | | |
| 000000 | AUTOMOBILE RENTAL--FALLS UNDER | | | |

DATE ISSUED

03/04/2020

MONTGOMERY, ALABAMA

**MUST BE POSTED IN AREA ACCESSIBLE TO PUBLIC**

*Pamela Barner-McCorvey*

Pamela Barner-McCorvey
Revenue Manager

**NOTICE**
License issued subject to compliance with all pertinent city codes.

# Alabama Department of Public Health

# FOOD PERMIT

**Montgomery**

**5712**

COUNTY

**Food Service Establishment**

PERMIT NUMBER

**Priority Category 3**

## DAYK Enterprises, Inc.

BUSINESS OWNER OR AUTHORIZED AGENT

IS HEREBY PERMITTED TO MAINTAIN AND OPERATE

## Country Inn & Suites Montgomery East

ESTABLISHMENT

LOCATED AT

**5155 Carmichael Road**

**Montgomery**

**36106-**

STREET

CITY OR TOWN

ZIP

THIS PERMIT SIGNIFIES COMPLIANCE ON THE DATE OF ISSUE WITH THE ALABAMA DEPARTMENT OF PUBLIC HEALTH RULES FOR

**Rules for Food Service Sanitation - 420-3-22**

PURSUANT TO ALABAMA LAW (SECTION 22-20-5 CODE OF ALABAMA, 1975) AND IS VALID UNTIL PERMIT EXPIRES, IS SUSPENDED OR REVOKED.

Date issued    **09/09/19**

Expiration Date    **09/30/20**

Scott Harris, M.D.
State Health Officer

Local or District Health Officer

Display for public view - not transferable

ADPH-FLP-102L.10.2017

# Alabama Department of Public Health



# HOTEL PERMIT

**Montgomery**
COUNTY

**5715**
PERMIT NUMBER

**DAYK Enterprises Innc**
Business Owner or Authorized Agent

## IS HEREBY PERMITTED TO MAINTAIN AND OPERATE

## Country Inn & Suites

### PROPERTY
### LOCATED AT

## 5155 Carmichael Road Montgomery AL  36106-

THIS PERMIT SIGNIFIES COMPLIANCE ON THE DATE OF ISSUE WITH THE ALABAMA DEPARTMENT OF PUBLIC HEALTH RULES FOR CONSTRUCTION, MAINTENANCE, AND OPERATION OF HOTELS, CHAPTER 420-3-11 ALABAMA ADMINISTRATIVE CODE PURSUANT TO ALABAMA LAW (SECTION 34-15-3 CODE OF ALABAMA, 1975) AND IS VALID UNTIL PERMIT EXPIRES, IS SUSPENDED, OR REVOKED.

**09/09/19**
Date Issued:

**09/30/20**
Expiration

_Scott Harris_

**Scott Harris, M.D.**
State Health Officer

_Melanie Boggan_

**Melanie Boggan**
Local or District Health Official

# STATE OF ALABAMA

MONTGOMERY COUNTY

**CONTROL NO.**
0316024985

**LICENSE NO.**
0005368

**ACCOUNT NO.**
024985

ISSUED TO:

DAYK ENTERPRISES INC
5155 CARMICHAEL ROAD
MONTGOMERY, AL 36106

| DATE ISSUED | | |
|---|---|---|
| 02 | 08 | 2016 |
| MO. | DAY | YR. |

**LICENSE YEAR**

**2015-2016**

**EXPIRES**
**September 30, 2016**
**RENEW IN OCTOBER**

**BUSINESS LOCATION:**
DBA   COUNTRY INN & SUITES MONTGOMERY
EAST
5155 CARMICHAEL ROAD
MONTGOMERY, AL 36106

| LICENSE TYPE | |
|---|---|
| STORE LICENSE | |
| CHAIN STORE LICENSE | |
| OCCUPATIONAL LICENSE | ✕ |

| SECTION | BUSINESS TYPE | | LICENSE AMOUNT | FEE | PENALTY | CITATION | INTEREST | TOTAL |
|---|---|---|---|---|---|---|---|---|
| 115 | INNKEEPERS & HOTELS | 108 | 324.00 | 1.00 | 48.60 | 0.00 | 2.40 | 376.00 |
| | 100 rooms and over | | | | | | | |
| 118.2 | LAUNDRY - SELF SERVICE | | 22.50 | 1.00 | 3.38 | 0.00 | 0.23 | 27.11 |
| 176 | VENDING MACHINE | | 10.00 | 1.00 | 1.50 | 0.00 | 0.10 | 12.60 |
| | $12,000 or less | | | | | | | |
| 315 | SINGLE STORE | | 1.00 | 1.00 | 0.15 | 0.00 | 0.01 | 2.16 |

| | | |
|---|---|---|
| TRANSFER OF LICENSE | TOTAL | 417.87 |
| Evidence having been adduced before me that a bona fide sale of the business licensed by this certificate has been made by licensee, this license is transferred to said purchaser.<br><br>THOMAS L WHITE JR<br>State Comptroller | MAIL FEE | 0.00 |
| JULIE P. MAGEE<br>Commissioner of Revenue | TOTAL WITH MAIL FEE | 417.87 |
| Name of Purchaser | | |
| STEVEN L. REED | | |
| Issuing Authority | Issuing Authority | |

L2 02/08/2016 10:08AM CHECK

02/08/2016 10:08AM
DAYK ENTERPRISES INC
5155 CARMICHAEL ROAD
MONTGOMERY AL36106
115 - INNKEEPERS & HOTELS 376.00
118.2 - LAUNDRY - SELF SERVICE 27.11
176 - VENDING MACHINE 12.60
315 - SINGLE STORE 2.16
Total: 417.87

Acct Number 024985

License#: 0005368

# Montgomery County Health Department
# Swimming Pool Operation Permit

## Dayk Enterprises, Inc.

### Is herby permitted to operate

## Country Inn & Suites

Located at **5155 Carmichael Road**          **Montgomery**

**Permit Number**          **2105**

*This permit is the property of the Montgomery County Health Department and is revocable for cause, and shall be posted in a prominent place.*

**Date Issued  05/16/18**          **Expiration Date  02/28/19**

*Cynthia S Goocher*

—————————————————————
**Local/District/or State Health Official**

**<u>Additional Information</u>**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BANK OF HOPE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION NO. |
| DAYK ENTERPRISES, INC., d/b/a | ) | 2:20-cv-00155-MHT |
| Country Inn & Suites Montgomery | ) | (WO) |
| East, DAE SON SONG and KANG | ) | |
| SUN SONG, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER APPOINTING RECEIVER

In accordance with the memorandum opinion entered today, it is **ORDERED** that the recommendation of the United States Magistrate Judge (doc. no. 24) is adopted, and plaintiff's motion for appointment of a receiver (doc. no. 2) is granted.

It is further **ORDERED** as follows:

A.     Trigild Hospitality is appointed receiver (the "Receiver") in accordance with the provisions of this order; and

B.     The Receiver is hereby authorized, empowered and directed to take all actions as specified in and in accordance with this order.

1.    **Appointment of Receiver and the Receivership Property.**

1.1.    The Receiver is appointed receiver of the Receivership Property owned by Defendant Dayk Enterprises, Inc. dba Country Inn & Suites Montgomery East (the "Borrower") located at 5155 Carmichael, Montgomery, AL 36106, Montgomery, Alabama (the "Receivership Property"), effective upon entry of this order (the "Effective Date"). The Receiver's duty to act as receiver is subject to the terms of this order.

1.2.    As of the Effective Date, the Receiver is authorized to direct and take immediate possession and full control of the Receivership Property and to take such other actions as the Receiver deems reasonable and appropriate to take possession, to exercise full control over, to prevent waste, and to preserve, manage, secure and safeguard the Receivership Property. The Borrower shall not have either possession or control of, access to, or any right to Income (as defined below) derived from the Receivership Property.

1.3.    The Receiver shall take possession of and receive from all depositories, banks, brokerages, and other entities or organizations holding proceeds of the Receivership Property ("Financial Institutions"), whether such funds be in accounts titled in the name of Borrower or otherwise (but excluding any monies paid to or held by the Lender). All Financial Institutions are directed to deliver such proceeds to the Receiver and such records as the Receiver may

reasonably request with respect to such proceeds. The Receiver may indemnify the Financial Institution upon whom such demand is made for the delivery to it of Receivership Property, and is empowered to open or close any accounts with respect to Receivership Property. The Receiver shall deposit monies and funds collected and received in connection with the Receivership Property at a federally insured banking institution. The Receiver is authorized to use the Borrower's taxpayer identification number to establish such accounts.

     1.4.    The Borrower, its partners, stockholders, officers, directors, representatives, servants, contractors, agents, property manager, and employees with actual or constructive notice of this order are hereby ordered to cooperate with the Lender and the Receiver in the transition of the management of the Receivership Property to the Receiver, and on the Effective Date shall turn over to the Receiver all of the following pertaining to the Receivership Property (but only to the extent that such items are in their possession, custody or control):

    (a)    All keys;

    (b)    All records pertaining to occupancy including by way of illustration but not limitation, all guest ledgers, reservation reports, credit card billings; cash receipts journals;

    (c)    Any guest or occupant ledgers;

    (d)    The petty cash fund, if any;

    (e)    A current aged account receivables or delinquency report;

    (f)    An aged listing of all trade payables and other payables;

(g)    A copy of any records relating to operating expenses for the Receivership Property;

(h)    A list of utilities and utility accounts;

(i)    Year-end 2018 operating statement and year-to-date 2019 operating statement;

(j)    All on-site employee payroll records and employee files and applications;

(k)    An inventory of all equipment, furniture, vehicles and supplies for the Receivership Property;

(l)    All existing service contracts and all licenses including but not limited to liquor licenses;

(m)    All franchise agreements and/or membership agreements, including all amendments, and copies of all by-laws, rules and regulations of the franchisee relating thereto;

(n)    All signage agreements, including all amendments;

(o)    All pending bids for contractor work;

(p)    All insurance policies and copies of insurance certificates on the Receivership Property and their terms;

(q)    All vendor insurance certificates;

(r)    Site plans, surveys, specifications, floor plans, drawing, measurements, etc. for the Receivership Property;

(s)    Documents identifying and summarizing all pending litigation (excluding this action);

(t)    All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, supplies and all passwords needed to access such software and computer files, Email accounts maintained for the Receivership Property (and all off-site financial records) including, but not limited to, all records concerning the Income, and the operation and management of the Receivership Property;

(u)     All other books, records, security deposits, escrows, leases, contracts, computers and access to all financial and other information relating to the Receivership Property and the operations thereon that are maintained by the Borrower, its officers, agents or employees, in any form including electronically, including information regarding software programs utilized by such parties and all administrator access codes thereto in order to permit the Receiver access to all such information relating to the Receivership Property and the operations thereon. To the extent that such material or information is held by third parties, the Borrower shall take all reasonable and necessary measures to ensure access of the Receiver to the same; and,

(v)     Such other records pertaining to the management of the Receivership Property as may be reasonably requested by the Receiver.

1.5.    The Borrower shall fully cooperate with the Receiver in an attempt to add the Receiver and the Lender as additional insureds and the Lender as the loss payee on all insurance relating to the operation and management of the Receivership Property including, but not limited to, fire, extended coverage, property damage, liability, liquor liability, fidelity, errors and omissions, and workers' compensation, and modifying the policies if deemed appropriate by the Receiver, but subject to (1) Lender's written consent either directly by Lender or its counsel, or (2) a specific order of approval from this court (either (1) or (2), an "Approval") for any modifications to insurance. The Borrower and its property managers, employees, and agents are prohibited from cancelling, reducing, or modifying any and all insurance coverage in existence with respect to the

Receivership Property without prior Approval. If the Receiver determines in its sole discretion that the Borrower's insurance is inadequate to cover the Receivership Property, Receiver and the Lender, the Receiver is authorized to obtain fire, extended coverage, property and casualty, general liability, liquor liability, fidelity, errors and omissions, worker's compensation, and umbrella insurance policies. In the event that insurance coverage is not in place, the Receiver is authorized to obtain fire, extended coverage, property and casualty, general liability, liquor liability, fidelity, errors and omissions, worker's compensation, and umbrella insurance policies.

**2.** **Receiver's Duties and Authority.**

The Receiver, provided funds are available, shall be vested with and shall discharge the following authority, powers and duties:

(a) To maintain, secure, manage, operate, repair and preserve the Receivership Property.

(b) To change any and all locks to the Receivership Property and, if appropriate, limit access to some or all of the Receivership Property.

(c) To assume control over the Receivership Property and to collect and receive all Income.

(d) To prepare and maintain complete books, records, and financial reports of the Receivership Property, including, but not limited to, operating statements, income statements, balance sheets and all other statements prepared for the Receivership Property in a form acceptable to the Lender.

(e) To allow the Lender, its counsel and appraisers or other independent third-party consultants engaged by the Lender or its counsel access to

6

the Receivership Property at all reasonable times to inspect the Receivership Property and all books and records, and to cooperate with Lender, its counsel, appraisers and other independent third-party consultants to evaluate the Receivership Property.

(f)     To retain, hire, or discharge on-site employees (none of whom are or shall be deemed to be employees of the Lender) and without any liability to the Receiver.

(g)     To establish pay rates for any on-site employees.

(h)     To review existing workers' compensation, disability, general liability and "all risks" hazard insurance, to maintain the current insurance policies in place and to add the Lender and the Receiver as loss payees and additional insureds thereunder, as applicable and or obtain fire, extended coverage, property and casualty, general liability, liquor liability, fidelity, errors and omissions, worker's compensation, and umbrella insurance policies.

(i)     To maintain a separate account with a federally insured banking institution in the Receiver's own name, as receiver, from which the Receiver shall disburse all authorized payments as provided in this order.

(j)     To receive and endorse checks pertaining to the Receivership Property either in the Receiver's name or in Borrower's name.

(k)     To pay all appropriate Receivership Property taxes, personal property taxes, any other taxes or assessments against the Receivership Property, and to contest, protest or appeal any ad valorem tax or assessment, real estate property tax, personal property tax or other tax or assessment pertaining to the Receivership Property as the Receiver shall deem appropriate. Any refund or reimbursement of taxes whether paid by the Receiver or Borrower shall be deemed Income to be applied as provided below.

(l)     To prepare and file any tax returns stemming from the Receivership Property and the operation of the Receivership Property as may be required by law. The Receiver shall not be responsible for the preparation and filing of any tax returns for Borrower (including income, personal property, commercial activity, gross receipts, sales and use or other tax returns) other than to provide Borrower with

information in the Receiver's possession that may be necessary for Borrower to prepare and file its tax returns. Borrower shall provide to the Receiver any information needed to file any tax returns for the Receivership Property.

(m)   To operate the Receivership Property under any existing name or trade name (or new name, if the Receiver deems appropriate to do so).

(n)   To open and review mail directed to Borrower and its representatives pertaining to the Receivership Property.

(o)   To seek assistance of law enforcement officials as necessary to preserve the peace and protect the Receivership Property.

(p)   To continue, manage, operate, lease, market (including, without limitation, through the hiring of a broker) and, with the consent of Lender, to sell the Receivership Property pursuant to 28 U.S.C. §§ 2001, 2002 and 2004; provided, that completion of any such sale shall be subject to confirmation of the court.  Out of the monies arising from a sale of the Receivership Property, the Receiver is authorized to pay to Lender the amounts due on the Loan, including all interest, premiums and penalties, if any, and all attorneys' fees, the expenses of the sale, and costs, expenses and disbursements of this action, together with the sums which may have been and may be paid by Lender for insurance, taxes, franchise fees, charges and assessments on or relating to the Receivership Property, with interest thereon, so far as the amount of such monies properly applicable thereto shall suffice therefore.

(q)   To make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Receivership Property.

(r)   To enforce any existing contracts, permits, licenses, leases affecting the Receivership Property.

(s)   To: (1) enter into occupancy agreements and do all things necessary to continue normal Receivership Property operations; (2) execute, cancel, modify, renegotiate or abrogate all service, maintenance or other similar contracts not in excess of $5,000 relating to the operations of the Receivership Property (provided, that all such contracts are to be terminated upon a sale or disposition of the

8

Receivership Property or termination of the receivership); (3) pay all utilities, taxes, expenses and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business; (4) make repairs necessary to the maintenance of the Receivership Property, in order to preserve the Receivership Property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs and/or remediations having a cost of $5,000 or more without first obtaining Approval; and (5) take all steps necessary to comply with all requirements, regulations and laws applicable to the Receivership Property, and to deal with all regulatory authorities in connection with the same.

(t)     To, in its discretion, institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance and preservation of the Receivership Property, for the carrying out of the terms of any order of the court affecting the Receivership Property, to collect rents and other amounts now or hereafter becoming due, to remove tenants or other persons or entities from the Receivership Property, and/or to defend against any action brought against the Receiver acting in such capacity, and, with approval of the Lender, to utilize counsel for Lender and/or retain other counsel in connection with the foregoing.

(u)     To operate under the existing liquor license (if any) related to the Receivership Property and promptly make application, if the Receiver deems such application necessary or preferable, to the appropriate authorities to obtain an amended or new liquor license to sell alcoholic beverages as an incident to the operation of the Receivership Property. All existing licenses relating to the operation of the Receivership Property, including but not limited to any alcohol and beverage license(s), issued in the name of the Borrower are hereby assigned to the Receiver.

(v)     To engage contractors and skilled trades on a competitive bid basis to complete improvements to the Receivership Property and/or the Receivership Property and to maintain the Receivership Property and/or the Receivership Property, and to execute contracts for such purposes as the Receiver deems appropriate, if the aggregate amount

will be $5,000 or less or with respect to a life-threatening or other health or safety emergency.

(w) To hire counsel and accountants, and professionals as the Receiver may from time to time deem appropriate on such terms and conditions as agreed to by the Lender prior to any such retention and as the Receiver deems appropriate. All fees of any such professionals shall be treated as operating expenses of the Receivership Property.

(x) To secure the continuation, renewal, reinstatement of any franchise, membership or license agreements (or obtain a new franchise, membership or license agreement) pertaining to the Receivership Property, including the payment of any franchise or membership fees, but upon terms and conditions that are subject to Approval. Further, the Receiver is authorized and empowered to communicate, negotiate, and otherwise deal with the franchisor of the Property regarding compliance with and the cure of any possible defaults relating to any franchise, membership or license agreement between Borrower and the franchisor, subject to Approval in the event of any amendment to the franchise agreement or any cure costing in excess of $5,000.

(y) To conduct, in its discretion, remediation of any environmental contamination pertaining to the Receivership Property including the engagement of consultants, engineers, and other experts or agents that may be necessary to effectuate such remediation.

**3.      Receiver's Authority Subject to Approval.**

In carrying out the duties contained in this order, the Receiver may only

upon Approval:

(a) Other than as authorized in Section 2(w) above, engage contractors and skilled trades to complete improvements to the Receivership Property and/or the Receivership Property and to maintain the Receivership Property and/or the Receivership Property, and execute contracts for such purposes as the Receiver deems appropriate.

(b) Execute, cancel, modify, renegotiate or abrogate all service, maintenance or other similar contracts in excess of $5,000 relating to the operations of the Receivership Property. All such contracts are to

10

be terminated upon a sale or disposition of the Receivership Property or termination of the Receivership.

(c)     Subject to Sections 2(t) and 3(b) above, amend, terminate or reject any existing contracts affecting the Receivership Property.

(d)     Employ outside attorneys, outside accountants, agents and other professionals as the Receiver may from time to time deem appropriate on such terms and conditions as the Receiver deems appropriate. All fees of any such approved professionals shall be treated as operating expenses of the Receivership Property.

(e)     Defend actions against Borrower related to the Property and may incur expenses to defend such actions to the extent that the Receiver believes, in its sole discretion that it will protect and preserve the Receivership Property.

## 4.     **Extent of Receiver's Authority.**

4.1.     Although the Receiver shall have possession and control of the Receivership Property, the Receiver shall not take title to the Receivership Property. Title to the Receivership Property shall remain in the name of Borrower or its assigns, unless foreclosed upon by the Lender, or otherwise sold to a third party.

4.2.     Without limiting or expanding the foregoing, the Receiver is authorized to exercise all powers generally available and shall be subject to all the duties of a Receiver under the laws of the United States and the Commonwealth of Massachusetts that may be incidental to the management of the Receivership Property, as described in this order. The Receiver shall have any additional powers

that are provided by law and that the court may from time to time direct or confirm.

4.3.    The Receiver shall not take any action that impedes or interferes with any foreclosure or foreclosure sale process implemented by the Lender in carrying out the duties contained in this order, and Plaintiff shall have the right, at its option and without the requirement of any approval of this court, to foreclose the Mortgage and to otherwise realize upon the security for the Loan during the pendency of the receivership.

4.4.    The Receiver shall, during the pendency of this action, have the right to apply to this court for further guidance, instructions or directions.

4.5.    The Receiver is authorized to act on behalf of, and in Borrower's name (or the Receiver's name), as the Receiver deems appropriate without further order of this court and without personal recourse against the Receiver (subject to the general provisions, below).

4.6.    Neither the Lender nor the Receiver shall be liable for any obligation of Borrower relating to the Receivership Property that arose prior to the entry of this order, including, without limitation, any unliquidated or contingent obligations. Additionally, neither the Lender nor the Receiver shall be obligated to advance any funds to pay any expense of maintenance or other liability of the Receivership Property. Notwithstanding the foregoing, should the Lender, in its

12

discretion, decide to advance funds to maintain or preserve the Receivership Property, all advances to the Receiver by the Lender for the benefit of the Receivership Property, including any advances for working capital or improvements and any other costs and expenses incurred by the Receiver under this order shall be deemed protective advances under the Mortgage. Any such protective advance shall be fully secured by Lender's first priority mortgage lien and security interest against the Property. Any and all funds advanced by Lender to the Receiver pursuant to this order shall: (a) be deemed made pursuant to contract; (b) be added to the amount of the indebtedness owed by Borrower to Lender; (c) be deemed secured by the liens and security interests in favor of Lender under the loan documents on the Receivership Property to the same extent and with the same priority as other indebtedness secured by all existing liens and security interests under the loan documents in favor of Lender; and (d) accrue interest at the interest rate provided under the loan documents in favor of Lender. All such funds advanced, including interest on advances, shall be deemed a prior lien before the repayment of any and all other claims against the Receivership Property (except for taxes and assessments having first priority as a matter of law) or proceeds of either of them.

**5.    Receivership Property and Income.**

5.1.    "Receivership Property" means and includes:

(a)    The Receivership Property.

(b)    All tangible and intangible property used or usable in connection with the operations of the Receivership Property including, without limitation, the Collateral.

(c)    All Income (as hereinafter defined).

(d)    All fixtures, trade fixtures or tenant improvements of every kind or nature located in or upon or attached to or used or intended to be used in connection with the operation of the Receivership Property and any buildings, structures or improvements located on the Receivership Property (to the full extent of Borrower's interest in same).

(e)    All permits, licenses (including without limitation, liquor licenses) and other contracts and other intangible property pertaining to the Receivership Property or the operations of the Receivership Property.

(f)    All trade names and trademarks owned or used by Borrower in connection with the Receivership Property.

(g)    All books, records, accounts or documents that in any way relate to the Receivership Property and Income.

(h)    All other property, estate, right, title and interest as described in the Mortgage and other loan documents.

5.2.    The term "Income" means, collectively all cash, cash on hand, checks, cash equivalents, credit card receipts, demand deposit accounts, bank accounts, cash management or other financial accounts, bank or other deposits and all other cash collateral (all whether now existing or later arising) of the Borrower; current and past due earnings, revenues, rents, issues and profits, accounts or

14

accounts receivable (all whether unpaid, accrued or to become due) of the Borrower; all of the Borrower's claims to rent, issues, profits, income, cash collateral and all other gross income derived with respect to the Receivership Property or business operations of the Receivership Property regardless of whether earned before or after entry of this order.

5.3.    Income shall be applied in the following order of priority:

(a)    To the Receiver's approved fees and expenses as specified in this order;

(b)    To the current post-receivership operating expenses, and those expenses, prior to or after the date of the appointment of the Receiver, that the Receiver determines are necessary to the operation of receivership estate, including any on-site employee payroll expenses, any real estate taxes and any other taxes stemming from the operations of the Receivership Property and use in normal business operations of the Receivership Property incurred during the Receivership.  The Receiver shall not make disbursements other than as provided in the Approved Budget, as defined in Section 6.7 below, except for:

(i)    life-threatening or other health or safety issues;

(ii)    variations on individual line items not exceeding 10% so long as expenses in the aggregate are within 5% of the Approved Budget on a monthly basis; or,

(iii)    upon Lender's Approval;

(c)    reserve for operating expenses of the Receivership Property, working capital, capital improvements;

(d)    To the loan balance due Lender until paid in full; and

(e)    Any surplus to be held pending further order of the court.

5.4.    The Receiver shall make interim distributions of Income to Lender, to be applied to the amounts the Borrower owes to the Lender, on a monthly basis after payment of current operating expenses of the Receivership Property as reflected in the Budget (as defined in Section 6.6), and a reserve for future operating expenses of the Receivership Property, working capital, capital improvements, and payment of Receivership Property taxes, if the Receiver's "cash on hand" exceeds $10,000, unless otherwise agreed in writing by Lender.

### 6.    Receiver's Compensation, Reports and Accounting

6.1.    The Receiver shall be entitled to compensation for its services as follows:

(a)    Receivership/management fees equal to the greater of $4,000 or 3.0% of total gross revenues of the Receivership Property per month; plus

(b)    Accounting fees equal to $750 per month; plus

(c)    Reimbursement of reasonable out of pocket expenses; plus

(d)    A final receivership accounting fee equal to one month's Management Fee upon filing with the court of the Receiver's final accounting after the termination of the Receivership or the Receiver's removal as provided in Section 9.5.

6.2.    The Receiver's fees shall be paid (1) first from the Income from the Receivership Property and (2) next by the Lender, but only to the extent that the Income is insufficient to pay the Receiver's compensation. The Receiver's general

office administration, overhead and other expenses shall not be automatically charged against the Income or Receivership Property.

6.3.    Nothing in this order shall require the Receiver to advance funds other than from Income without a bond or security for payment satisfactory to the Receiver.

6.4.    Within thirty (30) days after obtaining possession of the Receivership Property, the Receiver shall submit to the court and the Lender a list of all the personal property, whether tangible or intangible, of which it has taken possession.

6.5.    Beginning in the calendar month following the entry of this order, by the twentieth (20th) day of each calendar month, the Receiver shall prepare a report on a monthly basis (each, a "Monthly Report") pertaining to the Receiver's activities and the operations of the Receivership Property during the immediately preceding month, including, without limitation, a summary of the Receiver's activities, an accounting of funds, assets and property in its possession, a report on the status of any legal claims or issues, an income and expense statement, balance sheet and a cash flow analysis of the Receivership Property. The Receiver shall include in each Monthly Report a request for payment of its reasonable out-of-pocket expenses and shall serve the Monthly Report on the Lender and the

Borrower. Absent written objection by Lender or Borrower, the Receiver may make payment of the requested amounts.

6.6.    The Receiver shall further prepare such additional budgets and projections as may be requested by Lender.

6.7.    The Receiver shall respond in a timely manner to reasonable requests by the Lender or Borrower for information regarding the Receivership Property, and shall furnish to the parties' counsel any additional information regarding the Receivership Property as required by law and as may be reasonably requested by them, but the Receiver is authorized to request instructions from this court should any party request information on documents which are unduly burdensome or expensive to produce, or to annoy or harass or for any other improper purpose.

6.8.    The Receiver shall furnish any reports to the following:

> Sang Hyeon Cho
> AVP & Special Assets Officer II
> Special Assets Department
> Bank of Hope
> 3200 Wilshire Blvd., 7th Fl.
> Los Angeles, CA  90010

with a copy to each of the following persons:

> Gregory M. Taube, Esq.
> Nelson Mullins Riley & Scarborough LLP
> 201 17th Street N.W.
> Suite 1700
> Atlanta, GA  30363

18

The Receiver shall also furnish a copy of any reports to each additional party who has entered an appearance in this matter.

### 7. **Management Agreement.**

7.1.     Subject to prior consent of Lender (except as set forth in Section 7.3), the Receiver is authorized to assign the duties of operating the Receivership Property to a third party (the "Manager"). The Receiver and the Manager shall enter into a written contract consistent with this order (the "Management Agreement"), pursuant to which the Receiver may delegate responsibility for management of the Receivership Property to the Manager.

7.2.     In the event that the Receiver hires a Manager pursuant Section 7.1, the fees payable to the Receiver pursuant to Section 6.1 shall additionally serve as compensation in full of the Manager for its operation of the Receivership Property, and no additional management fees or other compensation shall be payable to the Receiver or the Manager. The aggregate fees payable to the Receiver and the Manager shall not exceed the amounts listed in Section 6.1.

7.3.     Notwithstanding anything herein to the contrary, the Receiver may appoint Tylden Hospitality or an affiliate thereof as the Manager without prior consent of Lender.

8.     **Confidentiality.**

8.1.     "Confidential Information" means the Receiver's Reports and any other non-public information.

8.2.     The parties to this action, their counsel and all those in active concert or participation with them, with actual or constructive notice of this order, or otherwise, shall keep all confidential information provided by the Receiver confidential, and all such persons are prohibited from disclosing any such confidential information to anyone other than the parties to this action and their counsel without specific order of this court, except that Lender and its attorneys and agents may provide potential purchasers, consultants, or other appropriate persons with information useful for the marketing, leasing, selling or management of the Receivership Property.

9.     **Term and Final Accounting.**

9.1.     This Receivership shall continue until further order of the court.

9.2.     The Receiver shall be removed or replaced either (1) automatically thirty (30) days after the filing of a written demand for removal signed by Lender's counsel or the Receiver and filed with the court; or (2) in the court's equitable discretion upon a motion for cause. If the Receiver is removed, a successor receiver may be appointed by a stipulated order on behalf of Lender and Borrower. If Lender and Borrower cannot agree on a successor receiver, the court will name a

successor receiver by further order after a motion is filed by Lender or Borrower requesting the appointment of a successor receiver.

9.3.    Immediately upon termination of the Receivership, the Receiver shall turn over to Lender or its designee (including any property manager), all of the Receivership Property unless otherwise ordered by the court. Notwithstanding the foregoing, in the event that the Receivership is terminated through the sale of the Receivership Property to a third party through a foreclosure auction or otherwise, upon consummation of such sale, the Receiver shall turn over physical possession of the Property and books and records in its possession regarding the Receivership Property with the exception of cash and receivables, which the Receiver shall retain to pay all of the bills, fees and expenses during the Receivership period.

9.4.    The Receiver shall submit a final accounting (with copies to the recipients of the Receiver's Reports as identified above) for approval by the court within forty-five (45) days after the termination of the Receivership or the Receiver's removal.

9.5.    Only after the court approves the Receiver's final accounting may the Receiver be discharged and any Receiver's bond be cancelled.

10.    **General Provisions.**

10.1.    No person or entity shall file suit against the Receiver, or take other action against the Receiver, without an order of this court permitting a suit or action; provided, however, that no prior court order is required to file a motion in this action to enforce the provisions of this order or any other order of this court in this action.

10.2.    So long as the Receiver has acted in conformance with the terms and conditions of this order, the Receiver shall have no liability as to any claims, actions or causes of action of any third parties who have or would have claims against the owner of the Receivership Property or any officer, director or partner thereof, including, without limitation, any claims under any federal or state environmental laws; provided, however, that the Receiver shall be liable for: breach of any contract entered into by the Receiver; the Receiver's own gross negligence, intentional or willful misconduct, and malicious acts; or actions taken by the Receiver that are not in good faith or are not authorized by the terms of this order or any subsequent order of this court. Nothing in this order shall grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely determined in accordance with Alabama law. Receiver's liability shall be limited to the Receivership Property.

10.3.    The Receiver and its officers, directors, employees, agents and attorneys shall have no personal liability and they shall have no claim asserted against them relating to the Receiver's duties under this order, except for claims due to their gross negligence, intentional or willful misconduct, malicious acts and/or the failure to act in good faith or to comply with this court's orders.

10.4.    Notwithstanding any provision in this order to the contrary, Receiver does not assume and is not obligated to assume and will not be obliged to pay, perform or otherwise discharge and Employment-Related Liability (as defined below) of Borrower. Borrower is and will solely and exclusively liable with respect to all Employment-Related Liabilities. Without limitation of the generality of the foregoing, "Employment-Related Liabilities" includes all liabilities of Borrower to any former or current employee in any way related to such employee's employment with or separation from the Borrower including, but not limited to, any claims:  (a) for salary, wages, commissions, bonuses, benefits, vacation, or any other form of compensation; (b) arising out of any acts or omissions of Borrower or Borrower's agents and representatives with respect to any benefit plan, employee practices or employee programs, including employee claims of discrimination, retaliation or other wrongful conduct or discharge decisions; (c) severance liabilities; (d) obligations under employment contracts or any other related agreements with employees; (e) any change of control amounts payable to

23

any employees; (f) all liabilities under the Worker Adjustment and Retraining Notification Act (WARN) 29 U.S.C. 2101 *et seq*, or similar state statute or regulation; and (f) any other statutory or common law claim.

10.5.   Borrower, its partners, stockholders, officers, directors, representatives, servants, contractors, agents, property manager and all those in active participation or concert with them with actual or constructive notice of this order, and all those having claims against the Receivership Property who receive notice of this order, are enjoined from and shall not:

    (a)   <u>Commit Waste</u>.  Commit any waste on all or any part of the Receivership Property, or commit any act on all or any part of the Receivership Property in violation of law, or remove, transfer, encumber or otherwise dispose of any of the Receivership Property.

    (b)   <u>Collect Income</u>.  Demand, collect, receive, discount, or in any other way divert or use any of the Income.

    (c)   <u>Terminate Any Utility Service</u>.  Terminate or withhold any electric, gas, water, sewer, telephone or other utility service supplying the Receivership Property, require any utility deposit or otherwise interfere with the continued operations of the Receivership Property.

    (d)   <u>Interfere with the Receiver</u>.  Directly or indirectly interfere in any manner with the discharge of the Receiver's duties under this order or the Receiver's possession of and operation or management of the Receivership Property.

    (e)   <u>Transfer or Encumber the Receivership Property</u>.  Expend, disburse, transfer, assign, sell, convey, devise, pledge, mortgage, create a security interest in, encumber, conceal or in any manner whatsoever deal in or dispose of the whole or any part of the

Receivership Property including, but not limited to, the Income, without prior order of this court.

(f) <u>Impair the Preservation of the Receivership Property</u>. Do any act which will, or which will tend to impair, defeat, divert, prevent or prejudice the preservation of the Receivership Property, including the Income, or the preservation of Lender's interest in the Receivership Property and the Income. Specifically, but without limitation, neither the Borrower, any person with an interest in the Borrower, or the property manager or its employees, shall delete or destroy any information with respect to the Receivership Property including, without limitation, information maintained on a storage device.

10.6.     The Receiver shall have no rights other than as expressly set forth in this order and shall have no right to commence any action against the Lender or Borrower, or their respective officers, directors, shareholders, employees, attorneys, partners or affiliates; provided, however, that notwithstanding the foregoing, the Receiver may commence an action to the extent the Receiver reasonably deems such action necessary to enforce the terms of this order or to protect the Receivership Property under the control of the Receiver.

10.7.     The Receiver is required to exercise good faith business judgment in fulfilling its duties and responsibilities pursuant to this order, and shall faithfully perform and discharge the Receiver's duties and obey the court orders.

10.8.     The Receiver is subject to personal jurisdiction of the court.

10.9.    Upon approval of this order by the court, the Receiver shall be bound by each and every term contained in this order and each and every obligation of the Receiver imposed by this order.

10.10.   Nothing in this order is intended, nor shall it be construed, to constitute a waiver of any of the Lender's rights and remedies under the Mortgage or any other loan documents and applicable law and equity against the Borrower and/or against any other person(s), including any guarantor of the Loan, all of which rights and remedies are expressly reserved

10.11.   Notice of entry of this order shall be served by the Receiver upon all creditors of Borrower for whom the Receiver is able to obtain addresses.

**11.    <u>Amendment of Order.</u>**

This order may be amended for cause after a motion or hearing. This order may also be amended by agreed order by Lender, Borrower and the Receiver, and approved by the court.

**12.    <u>No Prejudice to Foreclosure/Final Order.</u>**

12.1.    This order shall not prejudice Lender's foreclosure of the Mortgage, or any action by Lender under any security agreement or under the Uniform Commercial Code with respect to the Property, or any action by Lender against any guarantor under any guaranty of the Loan, or any of Lender's other claims as

set forth in the Complaint or any amendments thereto.

**DONE,** this the 21st day of January, 2021.

/s/  Myron H. Thompson
UNITED STATES DISTRICT JUDGE